UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NELSON HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:17-cv-01268-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Nelson Harris ("Harris") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for supplemental security income ("SSI"). (Doc. 1). Harris timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

On July 21, 2014, Harris protectively filed an application for SSI, alleging disability beginning February 26, 2014. (Tr. 20, 148-154). The claim was denied initially on August 21, 2014. (*Id.*). Thereafter, on September 9, 2014, Harris filed a written request for a hearing. (Tr. 20, 97-99). Harris appeared before an Administrative Law Judge ("ALJ") and testified at a hearing

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

held on May 19, 2016, in Birmingham, Alabama. (Tr. 20, 39- 77). On August 19, 2016, the ALJ issued a decision finding Harris had not been under a disability, as defined in the Social Security Act, since July 21, 2014, the date the application was filed. (Tr. 28). Harris sought review by the Appeals Council, but it declined his request on July 8, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On July 28, 2017, Harris initiated this action. (*See* doc. 1).

Harris was forty-five years old on the date he filed his application. (Tr. 27). He has at least a high school education and is able to communicate in English. (Tr. 27). Harries alleges he cannot work because of his back problems. (Tr. 176).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

>      by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Harris had not engaged in substantial gainful activity since July 21, 2014, the application date.[4] (Tr. 22). At Step Two, the ALJ found Harris has the following severe impairments: obesity, sciatica, and degenerative disc disease of the lumbar spine. (*Id.*). At Step Three, the ALJ found Harris did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23).

Before proceeding to Step Four, the ALJ determined Harris's residual functioning capacity

---

[4] Harris worked after the application date, but this work activity did not rise to the level of substantial gainful activity, as Harris's earning records reveal he earned $ 58.00 in 2014. (Tr. 22, 148-171)

4

("RFC"), which is the most a claimant can do despite his impairments. The ALJ determined that Harris had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except Harris is able to frequently use bilateral foot controls; can frequently reach overhead bilaterally; can occasionally climb ramps and stairs, but never climb ladders or scaffolds; can frequently stoop, but can only occasionally crouch, kneel, and crawl; and in addition to normal workday breaks, would be off-task five percent of an eight-hour workday (non-consecutive minutes). (Tr. 23-26).

At Step Four, the ALJ determined Harris was unable to perform any past relevant work. (Tr. 26-27). At Step Five, the ALJ determined, based on Harris's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Harris could perform. (Tr. 27-28). Therefore, the ALJ determined Harris had not been under a disability and denied Harris's claim. (Tr. 28).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Harris failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Harris challenges the Commissioner's decision on the following grounds, contending: (1) the ALJ did not adequately apply the Eleventh Circuit Pain Standard or properly consider Harris's obesity when determining

5

his RFC; and (2) the Appeals Council Erred in Failing to Enter New and Material Evidence. (Doc. 12 at 5-12). Neither these grounds, nor the other allegations in Harris's brief, support reversal.

### A. The ALJ's Residual Functioning Capacity Evaluation is Supported by Substantial Evidence

#### 1. The ALJ Properly Applied the Eleventh Circuit Pain Standard and There is Substantial Evidence to Support His Decision

Harris contends "[t]he ALJ's RFC assessment made minimal provision for the effects of pain" and "failed to explain why [Harris] would be restricted by pain only [five percent] of the time as opposed to most of the time." (Doc. 12 at 7). Upon review of the ALJ's decision and underlying record, the ALJ properly applied the Eleventh Circuit Pain Standard when determining Harris's RFC. (Tr. 23-26).

When a claimant attempts to establish disability based on subjective complaints, including pain, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029. If the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his work must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the

6

evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p, 2016 WL 1119029, *7.[5] If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ properly evaluated Harris's subjective complaints of pain in accordance with the regulatory criteria and the Eleventh Circuit pain standard. (Tr. 23-26). Citing to the appropriate standard, the ALJ found that Harris met the criteria – Harris's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[;]" however, the ALJ also found that Harris's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 23-24). *See* 20 C.F.R. § 416.929; *Mitchell v. Comm'r Soc. Sec. Admin*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (recognizing that, once the pain standard is satisfied, it is the ALJ's job to assess whether a claimant's complaints of pain are consistent with the record evidence).

After reviewing Harris's treatment history for his back pain from 2014 to 2016, including a February 25, 2014 MRI, an October 23, 2015 MRI, and a March 10, 2016 MRI, the ALJ found the record supported the functional limitations detailed in the RFC, but expressed concerns with Harris's allegations regarding intensity, persistence, and limiting effects of those symptoms. (Tr. 24-25). The ALJ noted "[Harris's] assertions appear out of proportion and not as debilitating as

---

[5] SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p. SSR 16-3p eliminates the use of the term "credibility" and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016). *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307-08 (11th Cir. 2018).

alleged." (Tr. 25). For example, the ALJ noted that whereas Harris stated he was unsteady on his feet and was unable to walk or lift much, treatment notes show Harris had normal range of motion, normal muscle strength, and normal gain on most occasions. (Tr. 24-26, 241, 269, 272, 365, 369, 372, 375, 379, 382, 385, 389, 393, 400, 406). Harris's examination notes also reveal he was most often in no acute distress. (Tr. 25, 238, 245, 260, 269, 272, 291, 293, 298, 304, 308, 320, 324, 327, 331, 338, 364, 369, 375, 382, 385, 389, 399). Harris also reported working in landscaping, noting difficultly because he could not bend over for prolonged periods of time, after his alleged onset date. (Tr. 295). Harris did not require an assistive device to ambulate and was not prescribed a cane. (Tr. 26). Furthermore, Harris's most recent MRI from March 11, 2016, reported no acute vertebral body height loss or malalignment of the lumbar spine and only "mild" degenerative disc disease in the lumbar spine. (Tr. 402).

As to Harris's argument the ALJ "made minimal provision for the effects of pain" and "failed to explain why [Harris] would be distracted by pain only [five percent] of the time as opposed to most of the time[,]" the ALJ's decision shows otherwise. As the Commissioner points out, the ALJ reduced Harris's RFC to "light work" (from a potential ability to do "very heavy" work) with additional limitations to accommodate for pain. Furthermore, the ALJ expressly recognized that the combined effects of Harris's obesity, sciatic, and degenerative disc disease of the lumbar spine would limit him to light work. (Tr. 26). Then, considering Harris's allegations regarding back problems, the ALJ noted it was reasonable to conclude Harris's "ability to lift heavy items and stand or walk for a long period would be inhibited[,]" but also found treatment notes, imaging, and examinations revealed Harris could perform less than a full range of light work. (*Id.*). Specifically, the ALJ placed additional limitations to prevent exacerbation of Harris's condition or creating an unnecessary risk of injury to Harris or others. (*Id.*). These include limiting

Harris to only frequent use of bilateral foot controls and reaching overhead bilaterally based on complaints of back pain and radiating leg pain, limiting postural activities such as only occasional crouching, kneeling, and crawling, and, due to a history of back pain and possible side effects of medication, providing for Harris to be off-task five percent of the time, in addition to normal breaks. (Tr. 26).

The ALJ properly weighed the evidence in assessing Harris's complains and determining his RFC. Harris fails to directly address any of the ALJ's reasons for finding his allegations inconsistent with the record evidence and thus has not shown the ALJ's assessment was unreasonable or not supported by substantial evidence.

### 2. The ALJ Properly Considered Harris's Obesity

Harris next asserts "[t]he ALJ provided no reliable recitation of the standard for considering obesity in accordance with SSR 02-1p other than merely stating he had considered this Ruling in deriving an RFC." (Doc. 12 at 8).

The ALJ identified obesity as a severe impairment and recognized that, "although there is no listing for obesity, [he] considered how obesity can cause the claimant to meet or equal listing[s] in combination with other impairments pursuant to SSR 02-1p. (Tr. 22-23). The ALJ then stated he considered Harris's obesity in determining the RFC; specifically, when making findings regarding the standing, walking, lifting, carrying, and postural limitations. (Tr. 23). Later, when assessing Harris's RFC, the ALJ stated that Harris's "obesity was taken into account when assessing [his RFC] . . . ." (Tr. 25).

As an initial matter, Harris cites no authority to support his assertion that an ALJ must provide a detailed recitation of the substance and requirements of SSR 02-1p. (Doc. 12 at 7-8). To the contrary, an ALJ is required to issue a decision in accordance with an SSR, not summarize

9

its requirements. Furthermore, Harris fails to point to any functional limitation resulting from his obesity (alone or in combination with another of his impairments) that is inconsistent with the ALJ's RFC finding. (Doc. 12 at 7-8). The ALJ properly considered Harris's obesity, and Harris has not shown otherwise.

### 3. The ALJ Properly Considered Harris's Alleged Mental Impairments

Harris's brief contains a one sentence assertion that "[t]he ALJ did not factor anxiety or depression into his severe impairments or RFC finding at all." (Doc. 12 at 8). Harris's failure to provide any legal or evidentiary support for his claim dooms it. "Issue raised in a perfunctory manner, without supporting arguments or citations to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d at 1418, 1422 (11th Cir. 1998).

Furthermore, there is no evidence Harris presented a "colorable claim" that would have required the ALJ to follow the sequential evaluation process for mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). Although Harris's attorney briefly asserted that depression (not anxiety) contributed to Harris's inability to work (tr. 44), Harris failed to mention depression or anxiety when he testified why he could not work (tr. 55-68). Although diagnosed with "anxiety depression" and prescribed medication (tr. 339), Harris fails to allege any functional limitations based on his alleged depression or anxiety. *See Moore*, 405 F.3d at 1213 n.6. Accordingly, the ALJ did not err in his consideration of Harris's alleged mental impairments.

### 4. The ALJ Was Not Required to Obtain an Opinion from a Physician to Determine Harris's Claim

Harris also appears to suggest the ALJ erred because he did not obtain a medical source opinion before determining Harris's RFC. (Doc. 12 at 10-11). Specifically, although Harris also admits "there is no express requirement for a medical source opinion (MSO)[,]" he contends an MSO of some kind is crucial to the analysis of functioning based on the medically determined

impairments (MDI) determined." (*Id.* at 10). An ALJ does not need a medical source opinion to determine a claimant's RFC, as the task of determining a claimant's RFC is within the province of the ALJ. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). The lack of a medical source opinion is not grounds for reversal. *See Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014).

To the extent Harris argues (without citation to authority) there was a procedural error at the state agency level because the RFC evaluation was prepared by a single-decisionmaker without a medical consultant (doc. 12 at 10-11), this also lacks merit. In Alabama, a single-decisionmaker has authority to make disability determinations at the initial level without the signature of a medical consultant. *See* Program Operations Manual System ("POMS") DI 12015.100(B)(1), (C)(1), SSA POMS D1 12015.100.

### B. The Appeals Council Did Not Err in Denying Review

#### 1. The Treatment Records Submitted to the Appeals Council Were Neither New Nor Material

Harris alleges the Appeals Council "erred in failing to enter new and material evidence," and then contends the evidence was not made part of the record, necessitating a Sentence Four Remand. (Doc. 12 at 8) (citing *Ingram v. Commissioner*, 496 F.3d 1253 (11th Cir. 2007). These records include treatment notes from Birmingham Healthcare, dated April 8, 2016 through June 24, 2016, which include three visits to Birmingham Healthcare that occurred after the hearing, but before the ALJ entered his decision. (Tr. 32-36). Harris contends these records "document the diagnosis of lumbar radiculopathy treated with medications for severe pain, as well as intramuscular injections, and a referral for [ongoing pain management] and ongoing pain management." (Doc. 12 at 9).

The record show that Harris submitted these records in connection for his request for

review and the records were included as part of the certified administrative record. (Tr. 2, 32-36). To the extent Harris asserts they were not made part of the record (doc. 12 at 8), such a claim is without merit.

Additionally, the Appeals Council only evaluates new, material, and chronologically relevant evidence when deciding whether to grant a claimant's request for review. 20 C.F.R. §416.1470(b). The Appeals Council's denial of review indicates it evaluated the evidence. (Tr. 2); *see Mitchell v. Comm'r, Soc. Sec. Admin*, 771 F.3d 780, 784-85 (11th Cir. 2014) ("[T]he Appeals Council is not required to explain its rationale for denying a request for review."). That denial states "[y]ou submitted medical records from BHAM healthcare . . . . We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (*Id.*). The record shows that the evidence submitted was neither new nor material. For evidence to be "new" it must not be cumulative of evidence in the record. *Ashey v. Com'r, Soc. Sec. Admin.*, 707 F. App's 939, 943-44 (11th Cir. 2017). For evidence to be material, there must be a reasonable possibility that the evidence would change the administrative outcome. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290-91 (11th Cir. 2017).

Harris contends the evidence submitted to the Appeals Council "document[s] the diagnosis of lumbar radiculopathy treated with medications for severe pain, as well as intramuscular injections, and a referral for [ongoing pain management] and ongoing pain management." (Doc. 12 at 9). As the Commissioner points out (doc. 13 at 18), all of these facts – the diagnosis, referral to pain management, prescription pain medicine, and administration of injections – were already in the record. (Tr. 324, 328, 330-31). These records are therefore cumulative and not "new." Additionally, as the ALJ had these facts in the record and found Harris could perform a reduced range of light work, the records are not "material." The ALJ's decision recognized that Harris had

severe impairments and is consistent with that finding that Harris continued his treatment. Accordingly, the Appeals Council's decision to deny review was proper.

### 2. The Appeals Council Was Not Required to Discuss the Physician Assistant's Opinion

The records submitted to the Appeals Council also include a State of Alabama Department of Human Resources Food Stamp Program Form, completed by Physician Assistant Arthur McAdams on April 8, 2016. (Tr. 36). PA McAdams certified that, based on Harris's current medical condition, he did not believe he was mentally and physically able to work. (*Id.*). This form and opinion is not material, as it would not likely change the ALJ's decision.

PA McAdams opined that Harris could not work because of "chronic low back pain, sciatica, and muscle spasms." (Tr. 36). As an initial matter, while it may provide insight into the severity of an impairment and how it affects the individual's ability to function (*see* SSR 06-3p), an ALJ is not required to assign and explain weight given to a nonacceptable[6] medical source statement, such as one from a physician's assistant. *McMahon v. Comm'r, Soc. Sec. Admin.*, F. App'x 886, 891-92 (11th Cir. 2014); 20 C.F.R. §§ 416.913(a), 416.927(a)(2); *see also* SSR 06-03p (effective August 9, 2006 through March 26, 2017). Moreover, this blanket statement that Harris cannot work is not controlling and is not entitled to any special significance. 20 C.F.R. § 416.927(d)(3); *see Romero v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017); *Flowers v. Comm'r of Oc. Sec.*, 441 F. App'x 735, 742 n.5 (11th Cir. 2011). Finally, this record is not material because the observations – low back pain, sciatica, and muscle spasms – were already in the record before the ALJ, and thus would not likely change his opinion. (Tr. 22, 330, 338). Accordingly, the Appeals Council's decision to deny review was proper.

---

[6] Harris concedes a physician assistant is not an "acceptable" medical source. (Doc. 12 at 9).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Harris's claim for Supplemental Security Income is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 11th day of September, 2018.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE